**This order is SIGNED.**

**Dated: August 14, 2015**





**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 13-22995 |
| **MELANIE JEAN KRACHUN,** | Chapter 7 |
| Debtor. | |
| **DAVID C. WEST, in his capacity as Chapter 7 Trustee of Melanie Jean Krachun,** | Adversary Proceeding 15-2016 |
| Plaintiff, | Chief Judge William T. Thurman |
| v. | |
| **KENNETH TAD JEPPESEN, CAROLYN J. JEPPESEN, and WAYNE KRACHUN,** | |
| Defendants. | |

**MEMORANDUM DECISION**

The matters before the Court are the Chapter 7 Trustee's Motion for Partial Summary Judgment and Kenneth Tad and Carolyn J. Jeppesen's Cross-Motion for Summary Judgment. The Chapter 7 Trustee (the "Trustee") argues that liens obtained by Mr. Jeppesen and Wayne Krachun, another Defendant, are preferential transfers in violation of 11 U.S.C. § 547(b) and that transfers

received by Mr. and Mrs. Jeppesen are post-petition transfers in violation of 11 U.S.C. § 549(a). The Jeppesens counter by raising four arguments in their Cross-Motion: the Trustee abandoned the property at issue (certain real property and a possible avoidance action related thereto), the Trustee's claims are time-barred, the assets at issue were never part of the bankruptcy estate, and the Trustee is prevented from pursuing the assets based on principles of estoppel and laches. The Court conducted a hearing on the motions on June 12, 2015, where George B. Hofmann and Adam H. Reiser appeared on behalf of David C. West, the Trustee, and Timothy J. Dance and Jeff Tuttle appeared on behalf of the Jeppesens. Mr. Krachun, who filed a response to the Trustee's Motion through counsel, did not appear, and counsel for the Trustee indicated that the parties were in settlement negotiations.[1] Accordingly, the Court did not hear argument on the Trustee's Motion against Mr. Krachun.

At the inception of the hearing, the Court directed the parties to address the affirmative defenses in the Jeppesens' Cross-Motion, particularly the issue of abandonment. These affirmative defenses present threshold issues that could resolve the case efficiently: if Mr. Jeppesen prevails on the issue of abandonment, that will resolve the § 547(b) claim against him and the § 549(a) claim against him and Mrs. Jeppesen. The Court took the affirmative defenses arguments under advisement and reserved argument on the Trustee's Motion pending the outcome of the Jeppesens' Cross-Motion.

Based on the submissions and arguments of the parties and for good cause appearing, the Court issues the following memorandum decision, which constitutes its findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable in this proceeding through Fed. R. Bankr. P. 7052.

---

[1] *See* Case No. 13-22995, Docket 89.

2

**I.     JURISDICTION, NOTICE, AND VENUE**

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157. The matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F) and (H), and the Court notes that the parties appear to knowingly and voluntarily consent to this Court's jurisdiction. Venue is properly laid in this District under 28 U.S.C. § 1409, and notice was proper in all respects.

**II.    BACKGROUND**

On August 27, 2007, Mr. Jeppesen purchased real property located at 31 West Ridge Road, Unit 12, Building A, Saratoga Springs, Utah 84045 (the "Property").[2] The Warranty Deed used in connection with the purchase, recorded on August 30, 2007, provided that he and his daughter, Melanie Jean Krachun (the "Debtor"), acquired the Property as joint tenants.[3] Mr. Jeppesen subsequently sought and obtained a judgment against his daughter in the amount of $137,004.41 on February 5, 2013 in state court and recorded it against the Property in Utah County on March 13, 2013.[4] Mr. Krachun also sought and obtained a judgment against the Debtor and recorded it against the Property on February 15, 2013.[5] On March 21, 2013, eight days after Mr. Jeppesen recorded his

---

[2] The Trustee disputes whether Mr. Jeppesen purchased the Property without financial assistance from the Debtor. The Debtor testified at the meeting of creditors that Mr. Jeppesen alone provided the funding for the purchase of the Property, and Mr. Jeppesen agrees. Although this fact is in dispute, the Court does not find it to be a material fact in reaching its decision.

[3] Adversary Proceeding No. 15-02016, Docket 1, Exhibit A. Hereinafter, unless otherwise specified, all references to the Docket are to the Docket in Adversary Proceeding No. 15-02016.

[4] Docket 1, Exhibit C.

[5] Docket 1, Exhibit B. Under Utah law, in order to obtain a lien as a result of a judgment, the prevailing party must take some affirmative action to record it properly. Here, there is no dispute that Messrs. Jeppesen and Krachun have done so.

3

judgment lien, the Debtor filed for Chapter 7 relief.[6]

In conjunction with the bankruptcy filing, the Debtor filed Schedules and a Statement of Financial Affairs with the Court. On Schedule A, the Debtor listed a one-half interest in the Property and, on Schedule D, the judgment held by her father.[7] In response to Schedule D's request that the Debtor provide the "date [the] claim was incurred," the Debtor listed "8/27/2007,"[8] which is the date Mr. Jeppesen purchased the Property and the Warranty Deed was signed, but not the date the judgment lien was recorded. In response to Question 4(a) on the Statement of Financial Affairs, which asks that the Debtor list any suits or proceedings she was a party to within one year of the petition date, the Debtor listed the suit her father filed against her in state court and indicated that it resulted in a judgment in the amount of $137,004.41.[9] She also included the state court lawsuit's case number, which showed that the suit commenced sometime in 2012.[10] In response to Question 4(b), however, the Debtor indicated that none of her property had been attached within one year of the petition date.[11] It is unclear from the record whether the Debtor knew when Messrs. Jeppesen or Krachun recorded their judgments.

At the meeting of creditors, which the Trustee conducted on May 10, 2013, the Debtor testified that the Property was intended as an investment property, that Mr. Jeppesen provided the

---

[6] Case No. 13-22995, Docket 1.

[7] Case No. 13-22995, Docket 2, at 3, 9.

[8] *Id.* at 9.

[9] *Id.* at 33–34.

[10] *Id.* at 34.

[11] *Id.*

funding for the initial purchase of the Property, and that she believed the Property had no equity.[12] She described Mr. Jeppesen as her "partner" on the Property, but did not mention—and the Trustee did not ask—when his judgment lien was recorded.[13] The Trustee told the Debtor that he had received several phone calls regarding her case and that he had "a duty to . . . investigate and . . . verify [her] testimony [] because . . . [of] what might be some conflicting information."[14] During the Debtor's testimony, the Trustee explained that he appreciated her clearing up some of the information and requested supporting documentation.[15]

On August 9, 2013, the Court granted the United States Trustee's motion to extend the deadline for objecting to discharge,[16] and, in September 2013, the United States Trustee conducted a Rule 2004 examination of the Debtor regarding her disclosures, financial affairs, and other aspects of the case.[17] The United States Trustee moved a second time to extend the objection to discharge deadline, but later withdrew that motion.[18] Throughout the pendency of the case, Mr. Krachun contacted the Trustee, raising concerns about the assets of the estate, and on October 7, 2013, counsel for Mr. Jeppesen, Timothy J. Dance, spoke with the Trustee regarding the judgment held by

---

[12] Docket 14, at 6. Docket 14 is the Jeppesens' Cross-Motion, supported by Exhibits A through D. Not all of the attached exhibits are separately paginated. Therefore, when citing to any exhibit in Docket 14, the Court uses the overall pagination of Docket 14. For example, the Court would refer to page 3 of Exhibit C as page 43.

[13] *Id.*

[14] *Id.* at 50.

[15] *Id.* at 52.

[16] Case No. 13-22995, Docket 18.

[17] *See* Case No. 13-22995, Docket 33.

[18] *See* Case No. 13-22995, Docket 44.

Mr. Jeppesen.[19] During the conversation, Mr. Dance explained to the Trustee that Mr. Jeppesen wanted to clear the title to the Property and asked that the Trustee sell the Property.[20] He further explained that the Property was heavily encumbered, tied up in litigation, and that Mr. Krachun had a judgment lien against the Property.[21] The Trustee declined to sell the Property and he filed his final report on November 29, 2013, evidencing his conclusion of administering the estate, requesting the case be closed, and impliedly requesting that anything not administered be abandoned.[22] The Debtor received her discharge on December 11, 2013.

Mr. Krachun filed an objection to the Trustee's Final Report, questioning the Trustee's "diligence and thoroughness in identifying and seizing assets of [the] Debtor."[23] Accordingly, the Court conducted a hearing on the objection on January 9, 2014 (the "Final Report Hearing"). At the Final Report Hearing, Mr. Krachun explained that he believed there were assets that the Trustee had not yet found.[24] Specifically, he represented to the Court: "I don't know if her father gifted one half interest to the [D]ebtor or did the [D]ebtor deed one half interest of the [P]roperty to her father . . .

---

[19] *See* Docket 14, at 30. In Mr. Dance's declaration, Docket 14, at 55, he states that he called the Trustee and "disclosed all relevant information about the Property and the Judgment to the Trustee including the nature and timing of the Jeppesen Judgment."

[20] Docket 14, at 30.

[21] *Id.*

[22] *See* Case No. 13-22995, Docket 47. Once a final report is filed, it may be received by the Court, which authorizes the finalization of the case and the entry of an order closing the same. "Received" as used by the Court is a judicial determination that the Trustee has completed his administration and that the case may now be closed.

[23] Case No. 13-22995, Docket 52.

[24] Docket 14, at 26 ("I've been in contact with Mr. West over the past nine months, emailing, phone calls, he's been helpful . . . and I still think that there are assets.").

I'm not convinced that a thorough effort was made to investigate that, because the [P]roperty is worth $136,000."[25] In response, the Trustee represented that he had done his due diligence and that in his business judgment the case was "not worth pursuing further for assets" and that the United States Trustee "instructed" him that it was "not [his] job to go fishing for assets that [he didn't] know or believe [were] there."[26]

Principally due to the many communications he had with Mr. Krachun regarding the case, the Trustee spent over twenty-four hours on the case in "investigating and trying to understand what's happened," which is more time than he customarily spends on "most other cases."[27] In addressing the Property at the Final Report Hearing, the Trustee explained that he went to the effort of obtaining and reviewing the tax valuations and was aware of the judgment liens.[28] At no point did the Trustee mention the recording date of the judgment liens on the Property, simply that he was aware of the liens totaling $137,426.[29] The Trustee concluded his representations to the Court by stating: "I've spent a lot of time on the case, I've tried to use my best business judgment and I think that I've gone as far as I can go with this case."[30] The Trustee persuaded the Court that he had the

---

[25] *Id*. at 27.

[26] *Id.* at 29.

[27] *Id.*

[28] *Id.* at 30.

[29] *Id.* Although the total amount mentioned appears to only take into account the amount listed on Schedule D, the Trustee represented at the Final Report Hearing that Mr. Dance informed him of Mr. Krachun's lien against the Property, which was not listed on the Debtor's Schedule D.

[30] *Id.* at 32.

better argument. As a result, the Court overruled Mr. Krachun's objection and received the final report, finding that with the oversight of the United States Trustee, the Trustee conducted a reasonable investigation of the bankruptcy estate and prudently exercised his business judgment in administering the estate and submitting his Final Report.[31] The parties did not appeal the Court's ruling or move the Court to reconsider or vacate its findings, and the case was closed on March 21, 2014 by order of the Court.

Several months later, on November 14, 2014, the Debtor executed a quit claim deed, which had the effect of transferring her interest in the Property to Mr. Jeppesen, who in turn recorded the deed in Utah County with Mrs. Jeppesen as a joint tenant on December 29, 2014.[32] On December 19, 2014, the Trustee moved to reopen the case for "the purpose of administering an unlisted asset discovered after the Trustee had filed his no-asset report," which asset "consists of a possible pre-petition avoidable transfer by the Debtor."[33] Notice of the motion to reopen was sent to the mailing matrix, which listed all creditors and parties in interest including Messrs. Jeppesen and Krachun.[34] After a hearing on the motion to reopen, which did not request that any abandonment be revoked, the Court granted the motion, and the case was reopened on January 22, 2015.[35] On that same date, the Trustee filed the current adversary proceeding against the Defendants.

---

[31] *Id*. at 33–34.

[32] Docket 1, Exhibits D and E.

[33] Case No. 13-22995, Docket 69.

[34] *See* Case No. 13-22995, Docket 75.

[35] Case No. 13-22995, Docket 82.

## III.  DISCUSSION

### A.  *Summary Judgment Standard*

Under Fed. R. Civ. P. 56, made applicable in this proceeding through Fed. R. Bankr. P. 7056, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[37] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[38] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[39]

The movant may rely on admissions on file, affidavits, and other materials in meeting its burden to establish that there is no genuine issue of material fact.[40] When considering a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party, but the Court does not weigh the evidence or make credibility determinations.[41] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine

---

[36] Fed. R. Civ. P. 56(a).

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[38] *Id.*

[39] *Id.* at 249.

[40] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[41] *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013) (citation omitted)

9

issue for trial on a material matter."[42] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[43]

    B.    *Abandonment*

This proceeding presents a myriad of issues, but the threshold question is whether the Trustee abandoned the Property and the avoidance action,[44] and, if so, whether that abandonment can be revoked. The initial burden is on the Jeppesens to show that there is no genuine dispute that the Trustee abandoned the Property. If the Jeppesens meet their burden, the burden will shift to the Trustee to show a genuine issue for trial that the Property was not abandoned or that the abandonment may be revoked pursuant to Fed. R. Civ. P. 60(b), made applicable in this proceeding through Fed. R. Bankr. P. 9024.

Section 554© provides that unless otherwise ordered by the Court, "any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." Courts differ on the meaning of "scheduled" as used in § 554©,[45] but the underlying concern is whether the trustee

---

[42] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

[43] *Celotex*, 477 U.S. at 324.

[44] The thrust of the Trustee's complaint is to avoid the judgment liens of the Defendants, claiming them to be preferential. If successful, the Property would be free and clear of the judgment liens, thus enabling the Trustee to potentially sell the Property without those encumbrances and provide a greater pool of cash for unsecured creditors. If the Trustee may not revoke his abandonment, those liens would pass through the bankruptcy case and be enforceable after the case is closed.

[45] *In re Hill*, 195 B.R. 147, 149 (Bankr. D.N.M. 1996) (describing three different approaches that courts use in interpreting "scheduled in § 521" under § 554©: (1) all disclosures in schedules and the statement of financial affairs; (2) only disclosures in documents titled

is able to "efficiently [] identify and investigate a potential asset of the estate."[46] If the asset is scheduled and it is not administered, when a Chapter 7 case is closed, the remaining property of the estate is abandoned to the debtor "regardless of the trustee's intentions."[47] This is commonly referred to as a technical abandonment.[48] Although not dependent on the trustee's intentions, a technical abandonment requires an "intelligent decision by the trustee which can be made only on the basis of 'all reasonably available information.'"[49] If the estate property is concealed or the trustee had a "mere suspicion, which engendered only a cursory investigation" or the property was not scheduled by the debtor, the estate property is not abandoned when the case is closed.[50] Once

---

"schedules;" or (3) only disclosures made on "schedule of assets and liabilities"); *see also United States v. Holloway Grp., Inc.*, 515 B.R. 827, 829 (W.D. Okla. 2014) ("[T]he 'scheduled' requirement in § 554© refers to all of the disclosures required in § 521(a)(1), including the debtor's statement of financial affairs.").

[46] *Id.* at 150.

[47] *In re Woods*, 173 F.3d 770, 776 (10th Cir. 1999); *see also Redmond v. Kopp (In re Kopp)*, 374 B.R. 842, 846 (Bankr. D. Kan. 2007) ("[A]ny property scheduled by the debtor and not otherwise administered before case closing is technically abandoned to the debtor.").

[48] *See Cohen v. CitiMortgage, Inc. (In re Ramsburg)*, No. 12-00573, 2013 WL 5202431, at *5 (Bankr. D. Md. Sept. 13, 2013) (explaining that the term "technical abandonment" is used "because it occurs automatically upon case closure, without notice or hearing").

[49] *In re Hill*, 195 B.R. at 150 (citing *Mele v. First Colony Life Ins. (In re Mele)*, 127 B.R. 82 (D.D.C. 1991)); *see also In re Kopp*, 374 B.R. at 847 ("The Code does not deprive creditors the right to share in the debtor's property merely because the trustee fails to find the property or fails to take possession of it for the creditors. Section 554 removes property from the estate only after an informed decision by the trustee.").

[50] *In re Sutton*, 10 B.R. 737, 740 (Bankr. E.D. Va. 1981). *But see, e.g.*, *Vaquez v. Adair (In re Adair)*, 253 B.R. 85, 89 (B.A.P. 9th Cir. 2000) ("The mere fact that Debtor indicated that the value of the [l]awsuit was essentially unknown does not mean that she misled the Trustee or that he was deprived of sufficient information so as to preclude him from performing his duties.").

property is abandoned, it is no longer part of the bankruptcy estate and is outside the control of the trustee.[51]

A technical abandonment is revocable in limited circumstances,[52] and must be obtained through a court order.[53] If property has been abandoned, "a bankruptcy court may, in appropriate circumstances, revoke a technical abandonment . . . on the basis of Rule 9024 and Federal Rule 60(b)."[54] Rule 60(b) provides in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief.[55]

"It is generally agreed that for Rule 60(b) to be applied in a given case 'there must be some justification for the party's oversight and, in making this determination, it is appropriate for a court to consider 'the circumstances surrounding the party's inaction.'"[56]

Deciding whether a party meets the standard under Rule 60(b)(1) is an "equitable

---

[51] *See In re Hill*, 195 B.R. at 151.

[52] *See Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001) (describing that revocation of abandonment is appropriate "where the trustee is given incomplete or false information of the assets of the debtor, thereby foregoing a proper investigation of the asset").

[53] *See Catalano v. Comm'r*, 279 F.3d 682, 686 (9th Cir. 2002).

[54] *In re Wood*, 173 F.3d at 778.

[55] Fed. R. Civ. P. 60(b).

[56] *In re Sutton*, 10 B.R. at 738. The Trustee argues in his motion that he did not abandon the Property and that any abandonment can be revoked pursuant to Rule 60(b)(1) or (b)(6). Accordingly, the Court limits its discussion to these provisions.

[determination], taking account of all relevant circumstances surrounding the party's omission,"[57] including "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, [and] the reason for the delay."[58] Additionally, "fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable."[59] A party that took "deliberate action with negative consequences" will not obtain relief under Rule 60(b)(1) "when it subsequently develops that the choice was unfortunate."[60]

Rule 60(b)(6) gives the Court "broad authority to relieve a party from a final judgment 'upon such terms as are just . . . for . . . any other reason justifying relief from the operation of the judgment.'"[61] But such relief can only be granted in "extraordinary circumstances,"[62] and "[c]ourts generally find extraordinary circumstances warranting relief under Rule 60(b)(6) only where the movant was not at fault in his predicament, and was unable to take steps to prevent the judgment

---

[57] *Pioneer Inv. Servs. Co.*, 507 U.S. 380, 395 (1993); *see also Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) ("More generally, '[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to esp[ecially] through carelessness.' The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.").

[58] *Jennings,* 394 F.3d at 856.

[59] *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir.2004) (quoting *City of Chanute v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir.1994)) (internal quotation marks omitted).

[60] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996) ("[The] 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgments only where: (1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order.") (citation and internal quotation marks omitted).

[61] *State Bank of S. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1080 (10th Cir. 1996).

[62] *Id.*

13

from which relief is sought."[63]

The Court first addresses whether the Property was properly scheduled under section 521(a)(1). The Trustee argues that the disclosures were inadequate or misleading because they did not state the date the judgment lien was recorded. It is unclear from the record whether the Debtor knew that Mr. Jeppessen recorded the lien eight days before the petition date, but based on the record before the Court, the Court finds the disclosures adequate in this case.

The Debtor listed the Property on Schedule A, showing her interest as a tenant in common with a property value of $115,000 and an encumbrance of $137,426.41. On Schedule D, the Debtor listed Mr. Jeppesen as the judgment lienholder on the Property, including August 27, 2007 as the "date [the] claim was incurred." Question 4(a) on the Statement of Financial Affairs requests that the Debtor list any suit that she was a party to within *one year* prior to the bankruptcy filing, and she listed the lawsuit her father filed against her, including the 2012 case number, which resulted in the $137,004.41 judgment. Comparing the disclosures on Schedules A and D with the response to Question 4(a) on the Statement of Financial Affairs is sufficient to have alerted the Trustee to the potential asset of the bankruptcy estate (i.e., a potential avoidance action). Although the Debtor did not list the judgment lien on Question 4(b) of the Statement of Financial Affairs, the multiple disclosures brought the Property into the Trustee's sight, allowing him to investigate its value for the bankruptcy estate. Accordingly, the Court determines that the Property was scheduled pursuant to § 521(a)(1) and, because it was not administered, the Property and the potential avoidance action were abandoned pursuant to § 554© when the case was closed.

The Jeppesens have carried their burden in establishing that there is no genuine dispute that

---

[63] *Roman v. Carrion (In re Gonzalez)*, 396 B.R. 790, 803 (B.A.P. 1st Cir. 2008).

the Property and the avoidance action were abandoned. The Trustee's argument that the disclosures were inadequate or misleading because they did not include the dates the judgment liens were recorded does not raise a genuine issue for trial. The Trustee had the opportunity to efficiently identify and investigate the Property and the potential avoidance action. The Property and avoidance action were abandoned pursuant to § 554©. The Court, however, continues its analysis to determine whether the Trustee has raised an issue of material fact that would allow the abandonment to be revoked.

The Trustee contends that he did not pursue the Property and the avoidance action because he believed that Mr. Jeppesen's lien was unavoidable, thus the abandonment should be revoked based on "mistake, inadvertence, surprise, or excusable neglect" pursuant to Rule 60(b)(1) or based on extraordinary circumstances pursuant to Rule 60(b)(6). At some point between the closing of the case on March 21, 2014 and the Trustee's Motion to Reopen filed on December 19, 2014, the Trustee determined that the Property had value for the bankruptcy estate and an avoidance action should be pursued. The Trustee does not describe what occurred during that lapse of time that led him to make that determination.

Rule 60(b)(1) requires the Court to take into account all relevant circumstances in determining whether relief should be granted for "mistake, inadvertence, surprise, or excusable neglect." The undisputed facts before the Court show that neither the Property nor the possible avoidance action were hidden or concealed from the Trustee and he was able to investigate both. The case was pending for approximately eight months before the Trustee submitted his Final Report, which was sufficient time and opportunity to research the possibility of an avoidance action. At the Final Report Hearing, the Trustee explained his numerous communications with Mr. Krachun and

his conversation with Mr. Dance about the Debtor's father attempting to clear the title to the Property. He also specifically made note of Mr. Krachun's judgment lien against the Property, which was not listed on the Debtor's Schedule D. He explained to the Court that he obtained and examined the tax valuations on the Property and believed the Property had no equity. The Trustee represented that he had done his due diligence in researching the Property, and, with the support of the United States Trustee, he exercised his business judgment in submitting the Final Report. In overruling Mr. Krachun's objection to the Trustee's Final Report, the Court ruled that the Trustee performed his duties reasonably and properly exercised his business judgment in administering the case.

The Trustee made an intelligent decision based on the reasonably available information when he submitted his Final Report and abandoned the Property and avoidance action. With the inquiries by Mr. Krachun and Mr. Jeppesen, through Mr. Dance, the Trustee had sufficient information to check on the validity of the judgment liens and their potential avoidance by either asking Mr. Jeppesen or his counsel for a copy of the recorded judgment or obtaining and reviewing a title or foreclosure report from a title company. The Trustee may have overlooked the avoidance action in his investigation and in hindsight the decision to abandon the Property may have been an unfortunate one, but these circumstances are not compelling and do not show mistake, inadvertence, surprise, or excusable neglect as contemplated by Rule 60(b)(1).[64]

Further, the Trustee did not move to reopen the case until approximately eight months after the closing of the case. During that time, Mr. Jeppesen obtained a quit claim deed from the Debtor relating to the Property. He relied on the finality of the closing of the case and acted on such. To

---

[64] *See Cashner*, 98 F.3d at 577 ("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party.").

grant relief under Rule 60(b)(1) would prejudice Mr. Jeppesen. Due to the danger of prejudice to Mr. Jeppesen, the Debtor's disclosures, active involvement from the creditors throughout the case, the ample opportunity to investigate the Property and the avoidance action, the deliberate and counseled decision of the Trustee to abandon the scheduled, unadministered assets, and the length of the delay in reopening the case, the abandonment may not be revoked pursuant to Rule 60(b)(1).

Lastly, the Trustee has not demonstrated extraordinary circumstances to warrant relief under Rule 60(b)(6). The Property was scheduled, and the Trustee knew that the Debtor's father and Mr. Krachun held judgment liens against it. The Trustee conducted an investigation of the Property, but he overlooked the potential avoidance action. He could have asked for a copy of the judgment liens or obtained a title or foreclosure report, but he did not. These circumstances are not extraordinary, just unfortunate. The Trustee has not demonstrated cause for the Court to revoke the abandonment pursuant to Rule 60(b)(6).

**IV.   CONCLUSION**

There is no genuine dispute that the Property and avoidance action were abandoned, and there is no showing from the Trustee that would allow the Court to revoke the abandonment. The Jeppesens are entitled to judgment as a matter of law. Accordingly, the Jeppesens' Motion for Summary Judgment will be granted and the Trustee's Motion for Summary Judgment will be denied.

_____ooo0ooo_____
## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

George B. Hofmann
Adam H. Reiser
COHNE KINGHORN PC
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
    *Attorneys for Chapter 7 Trustee*

David C. West
321 North Mall Drive, Ste. O-202
St. George, UT 84790
    *Chapter 7 Trustee*

Timothy J. Dance
Jeff Tuttle
SNELL & WILMER
15 W. South Temple, Ste. 1200
Salt Lake City, UT 84101
    *Attorneys for the Jeppesens*

Donald T. Hamel
NEMELKA & NEMELKA
6806 South 1300 East
Salt Lake City, UT 84121
    *Attorney for Wayne Krachun*

United States Trustee
Ken Garff Bldg.
405 South Main Street, Ste. 300
Salt Lake City, UT 84111